UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JOSEPH NARVAEZ TORRES,          )
                                )
                Petitioner,     )
                                )
        v.                      )        No. 2:26-cv-00163-JRS-MG
                                )
SAM OLSON,                      )
KRISTI NOEM,                    )
PAMELA BONDI,                   )
BRISON SWEARINGEN,              )
                                )
                Respondents.    )

**ORDER GRANTING PETITION IN PART
AND DIRECTING FURTHER PROCEEDINGS**

On March 11, 2026, Petitioner Joseph Narvaez Torres filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the Department of Homeland Security's revocation of his Order of Supervision ("OSUP") and his subsequent civil detention in Clay County Jail. Dkt. 1.

For the reasons described below, the Court **grants** in part Petitioner's habeas petition, ordering the Respondents to **either immediately revoke Mr. Narvaez Torres' OSUP under the prescribed regulatory and statutory process or release him from detention**.

### I. Background

Mr. Narvaez Torres is a citizen of Nicaragua who entered the United States as a minor with his parents through Mexico in 2019. Dkt. 6-1 at 3. They were found to be inadmissible, issued a Notice to Appear, and returned to Mexico under Migrant Protection Protocols. *Id.* at 16. Mr. Narvaez Torres was issued a final order of removal on November 4, 2019. *Id.* at 1. On or about September 2, 2021, Mr. Narvaes Torres again entered the United States as a minor through Mexico

1

with his parents. Dkt. *Id*. at 5. Mr. Narvaez-Torres was issued an OSUP. Dkt. 1-2. He has applied for asylum, but his application has not been granted. Dkt. 1 at 1.

On March 9, 2026, ICE officers ran a records check on Mr. Narvaez Torres and found that he had not complied with the conditions of his OSUP. Dkt. 6-1 at 8. The Supervisory Detention and Deportation Officer therefore signed a Warrant for Arrest (Form I-200) and the Assistant Field Office Director signed a memo of Cancellation of Form I-220A, which purported to cancel Mr. Narvaez-Torres' OSUP. Dkt. 6-1 at 8; dkt. 6-2; dkt. 6-3.Ex. 2. On March 10, 2026, ICE officers located and arrested Mr. Narvaes Torres and served him with the Warrant for Arrest. *Id*. He was interviewed and admitted that he was a citizen of Nicaragua with no lawful basis to be in the United States. Dkt. 6-1 at 9. He also conceded that he had no applications or petitions pending that would afford him the right to enter or remain in the United States. *Id*. Mr. Narvaez Torres filed his petition for writ of habeas corpus on March 11. (Dkt. 1.)

Mr. Narvaez Torres was booked out of the Clay County Justice Center on March 11, transferred to Indianapolis, and then transported by plane to ICE's Oakdale Processing Center facility in Louisiana, arriving at 3:11 p.m. Dkt. 6-4. He is currently detained at Oakdale. *Id*. The Court issued its Order to Show Cause on March 12, which the U.S. Attorney's Office transmitted to the ICE Office of Principal Legal Advisor at 5:18 p.m the same day.[1] Dkt. 6 at 3. The Respondents do not dispute that this court has jurisdiction over Mr. Narvaez Torres' habeas petition. *Id*.

## II. Legal Standard

---

[1] The Order to Show Cause stated that Respondents "shall not transfer Petitioner outside the jurisdiction of the United States or transfer him to any federal judicial district other than those in the States of Illinois, Indiana, or Wisconsin during the pendency of this habeas petition." *See* dkt. 4. Because Mr. Narvaez Torres was removed before the Court issued the Order to Show Cause, it does not appear that the Respondents transferred him in violation of the Court's order. Furthermore, Mr. Narvaez Torres does not argue that he is entitled to relief based on violation of the order.

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Three sources of law govern the Court's analysis of the instant petition.

First, the Attorney General is required to detain an alien, who has been ordered removed, for 90 days. 8 U.S.C. § 1231(a)(1). "If the alien does not leave or is not removed within the [90-day] removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). Noncitizens who have been ordered removed for certain specified reasons may be released, subject to supervision, at the Attorney General's discretion. 8 U.S.C. § 1231(a)(6). Federal regulations specify that ICE may release individuals and place them on an OSUP only if they "demonstrate[ ] to the satisfaction of the Attorney General . . . that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal." 8 C.F.R. § 241.4(d); *see also id.* § 241.4(e)(6).

Second, federal regulations prescribe procedures for revoking an OSUP and for returning a removable noncitizen to custody. If the noncitizen "violates the conditions of release," he "will be notified of the reasons for revocation" of release, returned to custody, and "afforded an initial informal interview promptly after" return to custody so he may have "an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1).

Alternatively, § 241.4(l)(2) provides that:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:

3

i.    The alien violate[d] any condition of release;

ii.   It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

iii.  The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

*Id.* Section 241.4(l)(3) provides for additional reviews to occur following re-detention.

Third, the Administrative Procedure Act requires federal courts to "hold unlawful and set aside agency action" that is found to be:

A.  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

B.  contrary to constitutional right, power, privilege, or immunity; [or]

C.  in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

5 U.S.C. § 706(2). "[C]ourts have consistently demanded governmental compliance with administrative regulations designed to safeguard individual interests." *Martinez Camargo v. I.N.S.*, 282 F.3d 487, 491 (7th Cir. 2002); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954) ("We think the petition for habeas corpus charges the Attorney General with precisely what the regulations forbid him to do: dictating the Board's decision. [W]e object to the Board's alleged failure to exercise its own discretion, contrary to existing valid regulations."). ICE is "required to follow [its] own regulations . . . including those that govern exercises of an agency's discretion." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021); *see also K.E.O. v. Woosley*, 2025 WL 2553394, at *3 (W.D. Ky. Sept. 4, 2025) ("Based upon the record provided, no reasons were provided by ICE and no informal interview promptly occurred. . . . ICE's failure to follow their own regulations violate the *Accardi* doctrine and K.E.O.'s procedural due process rights."); *N.A.L.R. v. Bondi, et al.*, Case No. 4:25-cv-00192-SEB-KMB, 2025 WL 2987239, at *3 (S.D. Ind. Oct. 23, 2025) (same).

4

## III. Analysis

The parties do not dispute that Mr. Narvaez Torres is subject to a final order of removal and his detention is authorized by 8 U.S.C. § 1231(a). However, Petitioner contends that his current confinement is unlawful because the government did not follow its own procedures set forth in § 241.4(l) to revoke his release when he was arrested and re-detained on March 10.

Respondents advance three responses to Petitioner's claims, which are addressed below.

### A. Jurisdiction

Respondents maintain that 8 U.S.C. § 1252(g) precludes judicial review of this petition. Dkt. 6 at 3-5. Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision or action by [ICE] to . . . execute removal orders against any alien." This argument by Respondents is unavailing.

As the Seventh Circuit has previously held, "nothing in § 1252(g) precludes review of the decision to confine." *Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000). This is true because § 1252(g) bars a district court's judicial review of only "the three listed decisions or actions." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021) ("[sec 1252(g)] does not sweep broadly; only challenges to the three listed decisions or actions—to commence proceedings, adjudicate cases, or execute removal orders—are insulated from judicial review.") (citing *Reno v. American-Arab Anti–Discrimination Comm. (AAADC)*, 525 U.S. 471, 482 (1999)); *Dep't of Homeland Sec. v. Regents of the Univ. of California,* 591 U.S. 1, 19 (2020) (rejecting as "'implausible'" any claim that § 1252(g) covers "all claims arising from deportation proceedings." (quoting *AAADC*, 525 U.S. at 482)); *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) ("Parra. . . by contrast, did not ask the district court to block a decision 'to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.' His claim concerns detention while the

administrative process lasts, and it may be resolved without affecting pending proceedings. Section 1252(g) therefore does not foreclose review.") (emphasis added). Accordingly, the Court holds that it has jurisdiction over Mr. Narvaez Torres' petition because, and to the extent that it challenges his detention.

### B.  The Lawfulness of Petitioner's Detention Pursuant to 8 U.S.C. § 1231

Respondents next argue that Mr. Narvaez Torres is lawfully detained pursuant to the 90-day mandatory detention provision in § 1231(a)(1), given that 90 cumulative days have not passed since he was re-detained on March 10. Dkt. 6 at 5-6. Mr. Narvaez Torres contends that this mandatory detention does not apply to him because he was released on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A), and Respondents are required first to revoke his parole pursuant to the prescribed regulations before re-detaining him prior to his deportation. Dkt. 8 at 4-6. Mr. Narvaez Torres' petition and the documents he provided, however, show that he was released not on humanitarian parole, but on an OSUP. Dkt. 1at 7-8; dkt. 1-2.

Mr. Narvaez Torres does not appear to argue that he has been detained for the full 90-day removal period, and the record does not show that he was. *See* 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the [90-day] removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."). Respondents argue that detention is mandatory because Mr. Narvaez Torres is still within the 90-day removal window. Even if Mr. Narvaez Torres were still in the removal period, his detention is unlawful if the OSUP was not properly revoked.

### C.  The Lawfulness of Petitioner's Detention Pursuant to 8 C.F.R. § 241.4(l)(2)

Finally, Respondents argue that Petitioner's detention satisfies the requirements of § 241.4(l)(2) because ICE provided him with a notice of Form I-220A cancellation, a Warrant for Arrest that set forth the basis for his detention, and an interview. Dkt. 6 at 8.

Respondents have not provided any proof that Mr. Hernandez was an official authorized to revoke Petitioner's OSUP, according to § 241.4(l)(2). His signature identifies him as the "AFOD," and other records indicate he may have been the "acting" AFOD. Dkt. 6-2 at 1; dkt. 6-1 at 8 ("(A)AFOD Urbanski signed the memo of cancellation."). He does not appear to be the "Executive Associate Commissioner" or a "district director." *See* § 241.4(l)(2). Although the order gives Mr. Narvaez Torres notice of the reasons for revocation and it is not disputed that Mr. Narvaez Torres was provided with an interview at which he was able to challenge the grounds for his re-detention, Respondents have provided no evidence that Mr. Urbanski had the authority to cancel the OSUP.

Accordingly, the Court finds that Mr. Narvaez Torres established that he has been subject to an OSUP since September 2021, and that it has not been revoked by an authorized official. Applying the APA and the *Accardi* doctrine, the Court holds that the revocation of his release and his detention are contrary to law.

### D. Proper Remedy

In granting habeas relief, as in every other area of the law, "the remedy should be appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). In the pending case, the government possesses the statutory authority to detain Mr. Narvaez Torres but failed to apply the proper procedures for revoking its order of supervision. "Courts have repeatedly recognized the importance of process, particularly where, as here, a person's freedom hangs in the balance." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 157 (W.D.N.Y. 2025) (citing *Accardi*, 347 U.S. at 268).

Thus, the government is forthwith ordered to grant Mr. Narvaez Torres the process he was due from the beginning and, if it is unable to do so in the expeditious manner required, to release him.[2]

### IV. Conclusion

Petitioner's petition for a writ of habeas corpus is **granted** in part as follows:

Respondents, **by no later than 5:00 p.m. on March 31, 2026**, must file documentation with the Court showing that an expressly authorized official pursuant to 8 C.F.R. § 241.4(l)(2) has taken the necessary steps to revoke Petitioner's OSUP, or if Respondents are unable to take such action in the allotted timeframe, that they have released Petitioner from detention, subject to his most recent order and conditions of supervision.

Final judgment shall not issue at this time.

**IT IS SO ORDERED.**

Date: 3/24/2026

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

---

[2] Were the Court to order Petitioner's immediate release, the government could of course take the proper steps to revoke Petitioner's order of supervision and re-detain him. However, the more sensible approach is for the Court to order the government to comply with its regulations and release him if it cannot do so in a timely manner. *See Waller*, 467 U.S. at 50 ("If, after a new suppression hearing, essentially the same evidence is suppressed, a new trial presumably would be a windfall for the defendant, and not in the public interest."); *see also Jackson v. Denno*, 378 U.S. 368, 393–94 (1964) ("New York . . . should first provide Jackson with that which  he has not yet had and to which he is constitutionally entitled—an adequate evidentiary hearing productive of reliable results concerning the voluntariness of his confession. It does not follow, however, that Jackson is automatically entitled to a complete new trial including a retrial of the issue of guilt or innocence."); *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) ("Even if Petitioner could establish that Respondents violated their OSUP revocation procedures, the Court finds that Petitioner's release from detention . . . would not be appropriate. . . . Instead, the Court could order Respondents to provide Petitioner with a new Notice signed by the appropriate official and afford Petitioner a more robust interview.").

Distribution:

All electronically registered counsel